**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EBIN NEW YORK, INC.,<br><br>        Plaintiff,<br><br>  -against-<br><br>YOUNG CHUL LEE, KYUNG HO KANG, SM BEAUTY, LLC, S & L HAIR, INC., JOHN DOES 1-10 (said names being fictitious), and JOHN ROE CORPS. 1-10 (said names being fictitious),<br><br>        Defendants. | Case No.: _____<br><br>CIVIL ACTION<br><br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff, EBIN New York, Inc., by and through their attorneys, Kim, Cho & Lim, LLC, complaining of Defendants, YOUNG CHUL LEE, KYUNG HO KANG, SM BEAUTY, LLC, S & L HAIR, INC., JOHN DOES 1-10 (said names being fictitious), and JOHN ROE CORPS. 1-10 (said names being fictitious), aver as follows:

**NATURE OF THE ACTION**

1.      This is a case arising from a series of misappropriations of proprietary and confidential information of Plaintiff's business by Plaintiff's former employees and those former employees' subsequent employer.

2.      By way of, *inter alia*, unauthorizedly taking and using information obtained from Plaintiff in confidence, sharing Plaintiff's business, marketing, and advertising strategy, product development and design, and list of clientele, as well as by mimicking the trade dress of Plaintiff's products, Plaintiff's former employees and their subsequent employer unjustly enriched and benefited themselves economically, and caused confusion among the public as to the origin of their products.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); for trade dress infringement, false designation of origin, unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125; for false advertising under § 1125(a)(l)(B); 28 U.S.C. § 1337(a), this being a civil action arising under an Act of Congress regulating commerce; 28 U.S.C. § 1338(a), this being a civil action arising under the trademark laws of the United States, namely, the Lanham Act; 28 U.S.C. § 1338(b), this being a civil action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws. Supplemental jurisdiction over Plaintiff's state common law claims (for unfair competition, consumer fraud, deceptive trade practices and infringement under the common and statutory law of New Jersey) is conferred by 28 U.S.C. § 1367(a).

4.      Venue is proper in this district under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their business in this district, and Plaintiff was employed by Defendants in this district.

## PARTIES

5.      Plaintiff EBIN New York, Inc. ("EBIN") is a corporation organized and existing under the law of the state of New Jersey, with its principal place of business at 506 US-46, Teterboro, New Jersey 07608.

6.      EBIN is engaged in the business of developing, manufacturing, distributing, and selling cosmetics and beauty supplies such as wigs, hair care products, hair styling products and skin and color cosmetic products.

7.     EBIN is the owner of the trademarks 24 HOUR EDGE TAMER® (registration no. 4958982), 48 HOUR EDGE TAMER® (registration no. 4964624), and an applicant for the registration of the trademark EDGE TAMER™ (appl. ser. no. 87556105).

8.     Defendant Young Chul Lee ("YC Lee") is an individual who is a former employee of EBIN, with his last known address in the State of Illinois. YC Lee voluntarily resigned from his employment with EBIN on or around January 2017.

9.     Defendant Kyung Ho Kang ("KH Kang") is an individual who is a former employee of EBIN, with last known address at 177 Rutgers Road East, Orangeburg, New York, 10962. KH Kang resigned from his employment with EBIN on or about September 2017.

10.     Defendant SM Beauty, LLC ("SM Beauty") is a corporation organized and existing under the laws of the state of New Jersey, with its registered office located at 715 76th street, North Bergen, New Jersey 07047.  SM Beauty lists the address P.O Box 457, Morton Grove, Illinois 60053 and phone number (224) 676-4757 on its catalogues

11.     SM Beauty is engaged in the business of developing, manufacturing, distributing, and/or selling cosmetics and beauty supplies, including products such as wigs, hair care products, hair styling products and skin and color cosmetic products. SM Beauty is a direct competitor of EBIN.

12.     SM Beauty is the applicant for U.S. registration of the trademark TOUCHDOWN (serial no. 87214990).

13.     Defendant S & L Hair, Inc. ("S&L") is a corporation organized and existing under the laws of the state of Illinois, established February 18, 2017.  The address of its registered agent is 8707 Skokie Boulevard, Suite 301, Skokie, Illinois 60077. On its website (http://www.saplayahair.com), S&L lists the same mailing address as SM Beauty: P.O. Box 457, Morton Grove, Illinois 60053 and phone number (224) 676-4757.

14.    Defendants SM Beauty and S&L, together, form a joint enterprise.

15.    S&L manufactures products having the name "1st TOUCHDOWN EDGE TAMER", the product at issue in this litigation.

16.    Defendants, John Does 1-10, are fictitious names for individuals who may be liable to Plaintiffs for violations complained of herein.

17.    Defendants, John Roe Corps. 1-10, are fictitious names for businesses, partnerships, corporations, and/or legal entities who may be liable to Plaintiff for the violations complained of herein.

**FACTUAL ALLEGATIONS**
**GENERAL TIMELINE**

18.    Plaintiff EBIN entered into the beauty supply business in or around 2014 and applied to the United States Patent and Trademark Office ("USPTO") for registration of various trademarks including:

(a) 24 HOUR EDGE TAMER®, registered on May 17, 2016, reg. no. 4958982;

(b) 48 HOUR EDGE TAMER®, registered on May 24, 2016, reg. no. 4964624; and

(c) EDGE TAMER, application filed on August 4, 2017, serial no. 87556105.

19.    On or about April of 2016, EBIN hired Defendants YC Lee and KH Kang, as well as a third party individual Myong Hak Kang ("MH Kang", not to be confused with party-defendant KH Kang), for the following positions:

(a) YC Lee, as the marketing director, heavily involved with sales in Wisconsin, Illinois, and Michigan regions;

(b) KH Kang, as the regional sales director for the New York, New Jersey, and Canada regions; and

(c) MH Kang, as the marketing and promotion director, heavily involved with sales in Pennsylvania region.

20.     Since the commencement of their employment with EBIN, YC Lee and KH Kang were asked numerous times to sign a non-compete agreement in consideration of their continued employment, but they made excuses to avoid signing one.

21.     Despite their delay in signing the non-compete agreements, EBIN assigned YC Lee and KH Kang their tasks as marketing directors, as EBIN was in need of the work force, and relied on their assurances they would get to it when there were less urgent matters present.

22.     YC Lee and KH Kang intentionally avoiding signing the non-compete agreement in anticipation of their impending resignations from their employment with EBIN, and also in anticipation of their employment with EBIN's competitors whereby there stood to benefit from their espionage of EBIN's confidential and proprietary information disclosed to, or expropriated by them.

23.     On or about October 25, 2016, Defendant SM Beauty filed an application to the USPTO to register TOUCHDOWN as a United States trademark.

24.     On or about January 2017, YC Lee resigned from his employment with EBIN and joined his new employer, SM Beauty, as, upon information and belief, the vice president and a sales director in regions including Wisconsin, Illinois, and Michigan.

25.     On or about February 18, 2017, an individual named "Don Kim" organized and established the corporate Defendant S&L.

26.     On or about March 2017, MH Kang resigned from his employment with EBIN to join his new and joint employer, Defendants SM Beauty and S&L, as, upon information and belief, the regional sales director for Pennsylvania. MH Kang resigned from his employment with SM Beauty and S&L within one (1) month therefrom.

27.    On or about July 23, 2017, YC Lee appeared at the "2017 NFBS Trade Show" held at the Meadowlands Exposition Center in Secaucus, New Jersey.  YC Lee appeared there as a representative and agent of SM Beauty, advertising and promoting SM Beauty's products.

28.    On or about September 2017, KH Kang resigned from his employment with EBIN to join his new and joint employer, Defendants SM Beauty and S&L, as, upon information and belief, the regional sales director for New York and New Jersey.

29.    Under their employment with SM Beauty and S&L, YC Lee and KH Kang held substantially similar titles and duties as those which they held with EBIN.

30.    The same month, SM Beauty and S&L launched their new product "1st TOUCH-DOWN EDGE TAMER".  These products are widely distributed to the same retail stores to which EBIN supplies its products, particularly in the Wisconsin, Illinois, Michigan, New Jersey, and New York regions.

**BREACH OF FIDUCIARY DUTY BY EBIN'S FORMER EMPLOYEES**

31.    During their employment with EBIN, YC Lee, KH Kang and MH Kang (collectively, "Former Employees") were granted access to information confidential and proprietary to EBIN's business, solely for the purpose of conducting business on EBIN's behalf and for EBIN's benefit.

32.    The information which was available to the Former Employees included, but was not limited to:

(a)  EBIN's business, marketing, and advertising strategy;

(b)  EBIN's product development plans and designs;

(c)  EBIN's sales data, showing the sales statistics for each of EBIN's products; and

(d)  Lists of EBIN's clientele, including accounts lists and customer information.

33.     Upon information and belief, YC Lee had been in contact with SM Beauty during the period pre-dating the termination of his employment with EBIN, providing SM Beauty with EBIN's confidential information entrusted to YC Lee.

34.     Following YC Lee's resignation, YC Lee maintained contact with both KH Kang and MH Kang; KH Kang and MH Kang continuously provided EBIN's proprietary and confidential information to YC Lee, who was then an employee of SM Beauty, EBIN's competitor in the beauty supply market.

35.     Following MH Kang's transition from EBIN to SM Beauty and S&L, the Former Employees maintained contact with one another; KH Kang continuously provided EBIN's proprietary and confidential information to YC Lee, who were then employees of SM Beauty and S&L.

36.     Upon information and belief, these communications were facilitated and abetted by SM Beauty and S&L.

37.     The sharing of proprietary and confidential information assisted SM Beauty and S&L in launching their new product "1st TOUCHDOWN EDGE TAMER" (Exhibit A), as well as in forming their business and marketing strategy.

**SIMILARITIES IN PRODUCTS, BUSINESS STRATEGY, AND VENDORS**

38.     On or about September 2017, SM Beauty and S&L launched their product "1st TOUCH DOWN EDGE TAMER".

39.     Below is a clipped portion of EBIN's official website, advertising 24 HOUR EDGE TAMER.



40.     Below is an excerpt of SM Beauty's catalogue advertising 1st TOUCH DOWN EDGE TAMER.



41.   SM Beauty and S&L's product is similar to EBIN's 24 HOUR EDGE TAMER and

48 HOUR EDGE TAMER products in design in the following aspects:

|  | EBIN | SM Beauty and S&L |
|---|---|---|
|  | 24 HOUR EDGE TAMER and/or 48 HOUR EDGE TAMER | 1ST TOUCH DOWN EDGE TAMER |
| Text | For Professional Salon Use Only | For Professional Salon Use |
|  | Brazilian · Virgin · Natural · Hair | Perfect match for Brazillian Natural Hair |
|  | Perfect for Brazilian Natural Hair | |
|  | For Best Results Brazilian / Virgin / Natural Hair | |
|  | ARGANOIL EDGETAMER | Argan oil Tea tree oil |
|  | 24 HOUR EDGE TAMER | Holding up to 24 hours |
|  | 48 HOUR EDGE TAMER | Holding up to 48 hours |
| Prominent text font | *Times New Roman-like, Italics* | *Arial-like, Italics* |
| Image | | |
| Appearance | Gold-color plated text | Silver-color plating around text |
| Grades | Ultra Super Hold | Ultimate Touch |
|  | Extra Mega Hold | Super Touch |
|  | Extreme Firm Hold | Maximum Touch |
| Container Size | 120 ml | 125g |
|  | 80ml | 80g |
|  | 15ml | 25g |
| Scent | Citrious Fruit | Orange/Lemon/Blueberry |



42.     Most other similar products in the market refer to their product as "edge control," as opposed to "edge tamer"

43.     Below are images of a few products in the market sold as "edge tamer."

  

   

44.     No other beauty supply products in the market, which are sold as "edge tamer," are available in three different grades or strength of hold and in three different sizes.

45.     No other beauty supply products in the market, which are sold as "edge tamer," use Argan oil, or more specifically, Argania Spinosa Kernel Oil, as its main ingredient.

46.     Except for *SmartCare*™'s product[1] (bottom right), no other beauty supply products in the market, which are sold as "edge tamer," has on its container text words to the effect of "for professional salon use."

47.     Except for *SmartCare*™'s product, no other beauty supply products in the market, which are sold as "edge tamer," has gold or silver-color plated lettering on its container.

---

[1] EBIN is in the process of determining the manufacture of this product and is planning on engaging in settlement discussion and/or litigation with the manufacturer of this product.

48.     Even Google search for the term "1st touchdown edge tamer" under shopping category yields the following result (as of December 18, 2017):



49.     SM Beauty and S&L's method of advertisement is also similar to that of EBIN.

50.     To EBIN's knowledge, EBIN was the first in the beauty supply market to present and advertise its products on shelves with a screen at the top panel, which played YouTube videos for consumers to watch.

51.     SM Beauty and S&L's 1st TOUCH DOWN EDGE TAMER is advertised in a substantially similar method, as shown below:

 

52.     The only observable differences between these display stands are the color of the container and the variety of products displayed; all other characteristics are copied, mimicked, and/or imitated.

53.     Furthermore, SM Beauty and S&L's products are being shelved at majority of the vendors of EBIN; upon information and belief, the Former Employees have also misappropriated EBIN's list of its vendors and are using it to build SM Beauty and S&L's clientele.

54.     The extensive similarities between the appearance and function of the products, location of sale, and method of advertisement causes the public to confuse EBIN's products with those of SM Beauty and S&L.

55.     The Former Employees deliberately used the information, made available to them at the time they were still EBIN's employees, for the purpose of developing and marketing confusingly similar products directly competing with those of EBIN.

56.     SM Beauty and S&L induced the Former Employees to disclose and/or use those information for SM Beauty and S&L's benefit and thereby appropriated business and marketing strategy developed by EBIN at free of cost.

**FIRST CAUSE OF ACTION**
**(Violation of the Lanham Act, 15 U.S.C. § 1125; Trade Dress Infringement)**
**Against SM BEAUTY, LLC, and S & L HAIR, INC.**

57.    Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

58.    The trade dresses of Plaintiff's products 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER are not functional.

59.    The trade dresses of Plaintiff's products 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER are inherently distinctive and/or has taken on a secondary meaning within the beauty supply market.

60.    The trade dresses of Plaintiff's products 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER were inherently distinctive or had taken on a secondary meaning prior to Defendants' first sale of their product 1st TOUCH DOWN EDGE TAMER.

61.    The appearance of Defendant's product 1st TOUCH DOWN EDGE TAMER similar and closely resembles the trade dresses of Plaintiff's products 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER in shape, design, color, price, and packaging.

62.    The overall impressions created by the trade dresses, 1st TOUCHDOWN EDGE TAMER, 24 HOUR EDGE TAMER, and 48 HOUR EDGE TAMER, are similar.

63.    The similarities between these products create a likelihood that an ordinary consumer in the beauty supply market will mistake Defendants' product for that of Plaintiff.

64.    Defendants knowingly imitated Plaintiff's trade dress with a purpose to cause confusion and mistake by the consumers and to deceive them as to the origin of Defendants' products.

65.    As a result of the foregoing, Plaintiff has suffered harm and damage in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Trade Dress and Mark Infringement, and Unfair Competition in Violation
of N.J. Fair Trade Act, N.J. Stat. Ann. §§ 56:4-1 *et seq.*) (28 U.S.C. § 1367)
Against SM BEAUTY, LLC, and S & L HAIR, INC.**

66.     Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

67.     Defendant's aforesaid acts have likely injured and may continue to injure the professional business reputation of Plaintiff and dilute the distinctive quality of 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER marks and images, in violation of N.J. Stat. Ann. §§ 56:4-1 *et seq.*, and other applicable laws.

68.     By reason of the foregoing, Plaintiff has been greatly damaged by Defendant's use of 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER marks, images and intellectual property and, unless Defendants are restrained by this Court, will continue to be irreparably damaged with no adequate remedy at law.

## THIRD CAUSE OF ACTION
**(Dilution and Injury to Business Reputation under N.J. Stat. Ann. § 56:3-13.16)
(28 U.S.C. § 1367)
Against SM BEAUTY, LLC, and S & L HAIR, INC.**

69.     Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

70.     Defendant's aforesaid acts are likely to injure the business reputation of Plaintiff and dilute the distinctive quality of the 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER marks, images and intellectual property in violation of N.J. Stat. Ann. § 56:3-13.16 and other applicable laws.

71.     By reason of the foregoing, Plaintiffs have been greatly damaged by Defendant's use of the 24 HOUR EDGE TAMER and 48 HOUR EDGE TAMER marks, images and intellectual property and, unless Defendant is restrained by this Court, will continue to be

irreparably damaged with no adequate remedy at law and/or are entitled to injunctive and other relief under § 56:3-13.20.

## FOURTH CAUSE OF ACTION
### (Violations of Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 to -48) (28 U.S.C. § 1367) Against SM BEAUTY, LLC, and S & L HAIR, INC.

72.    Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

73.    Plaintiff is a person, Defendants are merchants or vendor, and Defendants' infringing goods are merchandise within the scope of the Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq*.

74.    Defendants' conduct comprises unlawful, unconscionable commercial practices, deception, fraud, false pretense, false promises, misrepresentation, and/or the knowing, concealment, suppression, or omission of material fact with intent that others rely upon such concealment, suppression or omission.

75.    Plaintiff has suffered an ascertainable loss.

76.    There is a causal relationship between Defendants' unlawful conduct and Plaintiff's ascertainable loss.

**77.**    Defendants are liable for Plaintiff's ascertainable loss including, without limitation, statutory treble damages and attorney's fees as provided for in the N.J. Consumer Fraud Act.

## FIFTH CAUSE OF ACTION
### (Common Law Unfair Competition) (28 U.S.C. § 1367) Against SM BEAUTY, LLC, and S & L HAIR, INC.

78.    Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

79.    Defendants' aforesaid acts constitute willful and intentional trademark infringement and unfair competition under the common law of the State of New Jersey.

80.     Defendants engaged in unfair competition with Plaintiff by using a confusingly similar mark, images and intellectual property in a manner which likely deceived and confused the public into believing that Defendants and their services were those of Plaintiff, or were licensed by, endorsed by, or otherwise associated with Plaintiff, and by misappropriating or attempting to misappropriate Plaintiff's trademark and image, goodwill and reputation and the related expenditures of time, resources and labor in connection therewith.

81.     By reason of the foregoing, Plaintiff has been greatly damaged by Defendants' impermissible use of their 1st TOUCHDOWN EDGE TAMER mark, image and intellectual property.  Unless Defendants are restrained by this Court, Plaintiff may continue to be irreparably damaged with no adequate remedy at law.

**SIXTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty) (28 U.S.C. § 1367)**
**Against YOUNG CHUL LEE and KYUNG HO KANG**

82.     Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

83.     Defendant Young Chul Lee was employed by Plaintiff for approximately nine (9) months until his resignation in January 2017.

84.     Defendant Kyung Ho Kang was employed by Plaintiff for approximately one and one half (1.5) years until his resignation in September 2017.

85.     During the terms of their employment, Defendants were under fiduciary duties to act solely for the benefit of Plaintiff and not contrary to Plaintiff's interests with respect to all matters connected with this employment relationship.

86.     Since prior to Young Chul Lee's resignation, Defendants breached their fiduciary duties by contacting Plaintiff's competitor, SM Beauty, LLC.

87.     Defendants also breached their fiduciary duties by secretly organizing, or preparing to organize, a competing business, S & L Hair, Inc.

88.     Defendants further breached their fiduciary duties by misappropriating confidential and proprietary information of Plaintiff's business for the benefit of Plaintiff's competitors.

89.     As to Defendant Young Chul Lee, he breached his fiduciary duty by soliciting Defendant Kyung Ho Kang and a third party individual Myong Hak Kang to leave their employment with Plaintiff.

90.     As a result of the foregoing, Plaintiff has suffered harm and damage in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Aiding and Abetting) (28 U.S.C. § 1367)**
**Against SM BEAUTY, LLC, and S & L HAIR, INC.**

91.     Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

92.     The individual Defendants has caused an injury to Plaintiff by way of breaching their fiduciary duties and by unauthorizedly disclosing Plaintiff's confidential and proprietary information to the corporate Defendants.

93.     The corporate Defendants were aware, generally or specifically, of their role as a part of an overall tortious activity at the time they provided assistance to the individual Defendants.

94.     The corporate Defendants provided assistance to the individual Defendants by offering them employment, continued employment, and promising to may wages or bonuses for the individual Defendants' tortious acts.

95.     The corporate Defendants has knowledge of the individual Defendants' tortious acts, as the individual Defendants were receiving the benefits of the information provided by the individual Defendants.

96.     By doing so, the corporate Defendants knowingly and substantially assisted the individual Defendants in committing tortious acts.

97.     For the foregoing reasons, Plaintiff has suffered harm and damage in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Civil Conspiracy) (28 U.S.C. § 1367)**
**Against all Defendants**

98.     Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

99.     Defendants were acting in concert to commit an unlawful act, specifically the breach of fiduciary duties by the individual Defendants and infringement of Plaintiff's trade dress by the corporate Defendants.

100.    Defendants were in an agreement amongst themselves to inflict harm or damage to Plaintiff by way of unauthrorizedly disclosing, distributing, and/or using Plaintiff's confidential and proprietary information, as well as Plaintiff's business, marketing, and advertising strategy, and further by mimicking the trade dress of Plaintiff's products and display stand.

101.    In facilitating this agreement among Defendants, the individual Defendants acted overtly by making available Plaintiff's proprietary information to the corporate Defendants.

102.    In facilitating this agreement among Defendants, the corporate Defendants acted overtly by using such information made available in direct competition with Plaintiff's business.

103.    By reasons of Defendants' agreement and overt acts, Plaintiff has suffered harm and damage in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Unjust Enrichment) (28 U.S.C. § 1367)**
**Against all Defendants**

104.    Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

105.    Defendants SM Beauty, LLC and S & L Hair, Inc. received benefits by way of inducing the individual Defendants to extract Plaintiff's confidential and proprietary information, as well as Plaintiff's business, marketing, and advertisement strategy and list of Plaintiff's clientele, for the corporate Defendants' use and benefit.

106.    Defendants Young Chul Lee, and Kyung Ho Kang received benefits by providing such information to the corporate Defendants by securing their employment with the corporate Defendants.

107.    Defendants' retention of that benefit of using Plaintiff's confidential and proprietary information, as well as Plaintiff's business, marketing, and advertisement strategy and list of Plaintiff's clientele, developed at Plaintiff's cost of time and money, without payment, would be unjust.

108.    Had Plaintiff known the facts regarding the course of conduct between the individual Defendants and the corporate Defendants, Plaintiff would have expected remuneration for the disclosure and/or use of those information supplied by the individual Defendants to the corporate Defendants.

109.    For the foregoing reasons, Plaintiff has suffered harm and damage in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A. Granting Plaintiff a declaratory relief stating that the trade dress of Plaintiff's product 24 HOUR EDGE TAMER is inherently distinctive or has taken on a secondary meaning within the relevant market;

B. Granting Plaintiff a declaratory relief stating that the trade dress of Plaintiff's product 48 HOUR EDGE TAMER is inherently distinctive or has taken on a secondary meaning within the relevant market;

C. Granting Plaintiff a declaratory relief stating that the trade dress of Plaintiff's product 24 HOUR EDGE TAMER is a protectable and enforceable intellectual property;

D. Granting Plaintiff a declaratory relief stating that the trade dress of Plaintiff's product 48 HOUR EDGE TAMER is a protectable and enforceable intellectual property;

E. Finding Defendants to have infringed on Plaintiff's trade dress;

F. Finding Defendants to have infringed on Plaintiff's trade dress with knowledge that such imitation of Plaintiff's trade dress was intended to be used to cause confusion, to cause mistake, or to deceive;

G. Granting Plaintiff injunctive relief and ordering Defendants to cease the sale and advertisement of their product 1st TOUCH DOWN EDGE TAMER;

H. Ordering Defendants to recall all infringing products in the market and to dispose of their inventory of such infringing products;

I. Granting Plaintiff injunctive relief and prohibiting Defendants from developing, manufacturing, advertising, selling, distributing, or otherwise introducing into commerce any products with appearance similar to that of Plaintiff's 24 HOUR EDGE TAMER;

J. Granting Plaintiff injunctive relief and prohibiting Defendants from developing, manufacturing, advertising, selling, distributing, or otherwise introducing into commerce any products with appearance similar to that of Plaintiff's 48 HOUR EDGE TAMER;

K. Ordering the corporate Defendants to remunerate Plaintiff, in form of reasonably royalty, for the use of Plaintiff's trademark and other information proprietary and confidential to Plaintiff;

L. Finding the individual Defendants to have breached their fiduciary duties owed to Plaintiff;

M. Prohibiting Defendants from contacting Plaintiff's vendors, whose contact information the individual Defendants obtained during their course of employment with Plaintiff, for any purposes or reasons relating to Defendants' competition with Plaintiff's business;

N. Finding the corporate Defendants to have aided and abetted the individual Defendants in their breach of fiduciary duties owed to Plaintiff;

O. Finding the Defendants were in conspiracy to commit the tortious acts alleged herein;

P. Granting Plaintiff monetary relief for lost profit, loss of good will, punitive damages, and legal fees and costs incurred herein;

Q. Finding all Defendants jointly and severally liable for the monetary relief granted by this Court; and

R. Such other and further relief as the Court may deem proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: Palisades Park, NJ                    Respectfully submitted,
       December ___, 2017

                                   **By:** /s/ *Joshua S. Lim*
                                        Joshua S. Lim, Esq.
                                        **KIM, CHO & LIM, LLC**
                                        460 Bergen Park Boulevard, Suite 305
                                        Palisades Park, NJ 07650
                                        Tel: (201) 585-7400
                                        Fax: (201) 585-7422
                                        joshualim@kcllawfirm.com

**CERTIFICATION OF SERVICE UPON ATTORNEY GENERAL**

Pursuant to N.J. Stat. Ann. § 56:8-20, service of a copy of the within Complaint and Demand for Jury Trial in this matter is being made upon the Attorney General of the State of New Jersey, pursuant to the Consumer Fraud Act for the purpose of encouraging intervention, by mailing a copy of said complaint to Christopher S. Porrino, Attorney General, Office of the Attorney General, Hughes Justice Complex, P.O. Box 80, 25 West Market Street, Trenton, New Jersey 08625-0080.